# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-50022

United States Court of Appeals
Fifth Circuit

**FILED**
June 1, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JOSE GUSTAVO RICO-MEJIA, also known as Juan Gustavo Rico-Mejia,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

ON PETITION FOR REHEARING

Before STEWART, Chief Judge, and KING and DENNIS, Circuit Judges.

CARL E. STEWART, Chief Judge:

IT IS ORDERED that the petition for panel rehearing is GRANTED and our prior panel opinion, *United States v. Rico-Mejia*, 853 F.3d 731 (5th Cir. 2017), is WITHDRAWN.  The following opinion is SUBSTITUTED therefor.

Jose Gustavo Rico-Mejia pleaded guilty to illegal re-entry into the United States. The district court sentenced Rico-Mejia to 41 months of imprisonment and three years of supervised release. In making its sentencing determination, the district court imposed a sixteen-level enhancement for a past conviction under Arkansas law, on the grounds that it qualified as a "crime of violence."

No. 16-50022

*See* U.S.S.G. § 2L1.2(b)(1)(A)(ii). For the reasons that follow, we VACATE and REMAND for resentencing.

## I.

On January 21, 2015, Rico-Mejia was charged by indictment with illegally reentering the United States after deportation, in violation of 8 U.S.C. § 1326. On March 25, 2015, Rico-Mejia pleaded guilty without benefit of a plea agreement. A probation officer compiled his pre-sentence report ("PSR"). Applying the 2014 edition of the U.S. Sentencing Guidelines ("Guidelines"), the PSR recommended a base offense level of eight pursuant to U.S.S.G. § 2L1.2(a). The PSR also recommended a sixteen-level enhancement due to Rico-Mejia's September 14, 2007 conviction for terroristic threatening in violation of Arkansas code § 5-13-301(a)(1)—a felony in Arkansas that the PSR deemed to be a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii).[1] Rico-Mejia was given a three-level reduction for acceptance of responsibility, resulting in a total offense level of 21. Pursuant to the Guidelines, that offense level, combined with a criminal history category of II, resulted in a recommended sentencing range of 41 to 51 months' imprisonment.

At the December 17, 2015 sentencing hearing, Rico-Mejia objected to the sixteen-level enhancement, arguing that his prior state conviction did not constitute a crime of violence within the meaning of § 2L1.2 because "terroristic threatening" is not an enumerated crime of violence and does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (2014). Accordingly, Rico-Mejia contended that he should only have received a four-level increase. The district court disagreed and sentenced him to 41 months of imprisonment and

---

[1] All references to the Sentencing Guidelines refer to the 2014 version applicable in this case.

three years of supervised release, a sentence at the bottom end of the sentencing range. The district court acknowledged that the Arkansas statute could be violated by threats not involving physical force, but overruled Rico-Mejia's objection because the conduct actually charged in his case involved a threat to kill, which the district court believed to necessarily import an element of physical force. The sentencing judge also noted that he had "considered everything else about this case, including the conviction as well as the other [available] information concerning this particular defendant," and that the sentence he chose "would be the same sentence that I would pronounce even if I would have sustained the Defendant's objection to the Guideline Enhancement." Rico-Mejia appealed, challenging the sixteen-level crime of violence enhancement.

We first address whether the district court erred in imposing a sixteen-level sentencing enhancement pursuant to § 2L1.2(b)(1)(A)(ii). Finding that the district court did err, we progress to examine whether that error was harmless.

## II.

Section 2L1.2 of the Guidelines states that the offense level for unlawfully entering or remaining in the United States is increased by sixteen if the defendant has previously been convicted of a "crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). As the district court's characterization of Rico-Mejia's prior offense is a question of law, we review it de novo. *United States v. Herrera*, 647 F.3d 172, 175 (5th Cir. 2011) (citing *United States v. Hernandez-Galvan,* 632 F.3d 192, 196 (5th Cir. 2011)).

According to the Guidelines, a "crime of violence" consists of:

> [A]ny of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is

> involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (2014). This court has interpreted this provision to mean that a prior offense qualifies as a crime of violence if that offense "(1) has physical force as an element, or (2) qualifies as one of the enumerated offenses." *Herrera*, 647 F.3d at 175 (quoting *United States v. Gomez-Gomez*, 547 F.3d 242, 244 (5th Cir. 2008) (en banc), *superseded by regulation on other grounds, as recognized in United States v. Diaz-Corado*, 648 F.3d 290, 294 (5th Cir. 2011)). Because "terroristic threatening" is not included in the list of enumerated offenses above, we must now determine whether Rico-Mejia's conviction for terroristic threatening includes physical force as an element.

On appeal, Rico-Mejia argues that the district court erred in increasing his offense level by sixteen pursuant to § 2L1.2(b)(1)(A)(ii), contending that his prior Arkansas conviction for "terroristic threatening" does not constitute a crime of violence, since a person could "cause death or serious physical injury" even without using physical force and because the offense includes property damage while crimes of violence only involve injuries to people. In support of this contention, he cites *United States v. Johnson*, 286 F. App'x 155, 157 (5th Cir. 2008) (per curiam), an unpublished decision in which we held that a conviction for terroristic threatening under the same Arkansas statute did not qualify as a violent felony under 18 U.S.C. § 924(e)(2)(B)(i). There, we reasoned that even though the conduct in that case involved a threat to kill, a person could cause physical injury without using physical force. *Id.*; *see also United States v. Villegas-Hernandez*, 468 F.3d 874, 879 (5th Cir. 2006) ("There is . . .

a difference between a defendant's causation of injury and the . . . use of force."); *United States v. De La Rosa-Hernandez*, 264 F. App'x 446 (5th Cir. 2008) (per curiam) ("As in *Villegas*, a defendant could violate [the California Terroristic Threats law], for example, by threatening either to poison another or to guide someone intentionally into dangerous traffic, neither of which involve 'force', as that term is defined by our court.").

The Government responds that these cases have been overruled by *United States v. Castleman*, 134 S. Ct. 1405, 1414 (2014), which held that a defendant's guilty plea to having "intentionally or knowingly cause[d] bodily injury" to the mother of his child constituted "the use of physical force" required for a misdemeanor crime of domestic violence as defined in 18 U.S.C. § 921(a)(33)(A). The Government points out that as part of the Supreme Court's reasoning in that decision, it applied a definition of "use of physical force" that was much broader than that described in the above cases—one that could involve harm caused both directly and indirectly and that would include administering poison or similar actions. *Id.* at 1413–15.

Arkansas law decrees that a person is guilty of first-degree terroristic threatening if:

> (A) With the purpose of terrorizing another person, the person threatens to cause death or serious physical injury or substantial property damage to another person; or

> (B) With the purpose of terrorizing another person, the person threatens to cause physical injury or property damage to a teacher or other school employee acting in the line of duty.

Ark. Code Ann. § 5-13-301(a)(1). To determine whether a given prior conviction qualifies for a Guidelines enhancement, courts use either (1) the categorical approach or (2) the modified categorical approach. *United States v. Hinkle*, 832

F.3d 569, 574 (5th Cir. 2016) ("[W]e have generally used the categorical and modified categorical approaches in applying the federal sentencing Guidelines."). The district court in this instance determined that the Arkansas statute was divisible under the modified categorical approach, and, accordingly, referred to the charging document to conclude that physical force was an element of terroristic threatening.

The Supreme Court's decision in *Mathis v. United States*, 136 S. Ct. 2243, 2248–57 (2016) addressed when and how courts may use the modified categorical approach in the context of federal sentencing. *See also Hinkle*, 832 F.3d at 574 (noting that although *Mathis* did not explicitly involve the federal sentencing Guidelines, it was nonetheless controlling in this circuit as concerns application of the modified categorical approach in the context of those Guidelines). This court has observed that *Mathis* "instructs that there is a difference between alternative elements of an offense and alternative means of satisfying a single element," and that when a court confronts an alternatively-phrased statute, it must first "determine whether listed items in a statute are elements or means." *Id.* at 575 (internal quotation marks and citation omitted).

At the sentencing hearing, the district court responded to Rico-Mejia's argument that physical force was not an element of the previous conviction because a conviction could be obtained under § 5-13-301(a)(1) without proof that a defendant threatened to use physical force by asking, "[H]ow else would you threaten to kill someone unless you're going to use some type of force to bring about death, the actual killing? You can't wish somebody dead, right?" The answer to the district court's question is provided by the analysis set forth in *Johnson, Villegas-Hernandez,* and *De La Rosa-Hernandez*. These cases clarify that even if the district court correctly resorted to the modified

categorical approach, § 5-13-301(a)(1)(A) cannot constitute a crime of violence under § 2L1.2(b)(1)(A)(ii) because it lacks physical force as an element.

The Government's contention regarding *Castleman* must be rejected. By its express terms, *Castleman*'s analysis is not applicable to the physical force requirement for a crime of violence, which "suggests a category of violent, active crimes" that have as an element a heightened form of physical force that is narrower in scope than that applicable in the domestic violence context. 134 S. Ct. 1411 n.4 (noting that "Courts of Appeals have generally held that mere offensive touching cannot constitute the 'physical force' necessary to a 'crime of violence'" and clarifying that "[n]othing in today's opinion casts doubt on these holdings, because . . . 'domestic violence' encompasses a range of force broader than that which constitutes 'violence' *simpliciter*"). Accordingly, *Castleman* does not disturb this court's precedent regarding the characterization of crimes of violence, and § 5-13-301(a)(1)(A) cannot constitute a crime of violence under § 2L1.2(b)(1)(A)(ii) because it lacks physical force as an element. *See Herrera*, 647 F.3d at 175.

### III.

The Government also contends that even if the district court erred in determining that the sixteen-level enhancement applied, that error was harmless because of the district court's admonition that it would have imposed the same sentence even if it had sustained Rico-Mejia's objection to that enhancement.

The district court indicated that it considered multiple factors in imposing Rico-Mejia's sentence, including: (1) the PSR; (2) Rico-Mejia's personal characteristics; (3) the 18 U.S.C. § 3553(a) sentencing factors; (4) "the serious nature of the offense" and "particularly the quick turn-around between his last deportation from this country, and then his re-entry." The district court then indicated that it also had considered Rico-Mejia's conviction history—

which included convictions for driving while intoxicated, a previous illegal entry, and terroristic threatening—and the sentences imposed pursuant to those prior convictions. The district court also indicated that it did not consider arrests that did not lead to convictions. The district court then concluded that to "promote respect for our laws, to discourage future criminal misconduct, which . . . is important considering his extensive criminal history, the quick turn-arounds in violation of our Immigration laws, including this one," it was pronouncing the same sentence it would have pronounced even if the it had sustained Rico-Mejia's objection to the sixteen-level enhancement. The district court further added that "even if [terroristic threatening] wasn't a crime of violence, it could still be used as a conviction and considered as a factor for sentencing and promoting and considering public safety issues, as well as respect for our laws."

While a district court undoubtedly commits procedural error in improperly calculating the Guidelines range, *see United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012), that error can be considered harmless provided that the sentence did not result from the error. *United States v. Tzep-Mejia*, 461 F.3d 522, 526–27 & n.6 (5th Cir. 2006). One way to demonstrate that the sentence was not imposed as a result of the Guidelines error is to show that the district court considered the correct Guidelines range and subsequently indicated that it would impose the same sentence even if that range applied. *Id.* at 526 & n.6.

However, where the district court does not consider the correct guidelines range, a determination of harmlessness requires the proponent of the sentence to "convincingly demonstrate[] both (1) that the district court would have imposed the same sentence had it not made the error and (2) that it would have done so for the same reasons it gave at the prior sentencing."

*United States v. Ibarra-Luna,* 628 F.3d 712, 714 (5th Cir. 2010). This court has noted that such a showing involves a heavy burden, requiring the proponent to "point to evidence in the record that will convince [the appellate court] that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error." *Richardson,* 676 F.3d at 511 (quoting *Ibarra-Luna,* 628 F.3d at 717, 718) (internal quotation marks omitted). As there is no explicit or particularized statement from the district court showing that it calculated or considered the correct Guidelines range, our harmless error analysis must take place in the more demanding *Ibarra-Luna* scenario.

The Government points to several pieces of evidence in an effort to carry its burden. These include the various considerations listed by the district court in imposing the sentence and the district court's statement that it had "considered everything else about this case," which the Government argues would include Rico-Mejia's objection and the suggested sentencing range of 8–14 months contained within it.

Meanwhile, Rico-Mejia points to the facts that (1) the difference between his actual sentencing range and possible lesser sentencing ranges is significant (at least 20 months)[2], and (2) his sentence corresponded precisely to the bottom of the incorrectly calculated sentencing range. Rico-Mejia draws a parallel between his situation and the situation of the defendant in *United States v. Martinez-Romero,* 817 F.3d 917 (5th Cir. 2016), where the lowest end of the improperly calculated guideline range became the defendant's precise sentence, an occurrence which the court refused to attribute to "mere serendipity." *Id.* at 926. Key to the court's decision was the recognition that,

---

[2] Rico-Mejia avers that the highest his sentencing range could be without the sixteen-level enhancement is 15 to 21 months, based on a categorization of his prior conviction as an aggravated felony. Yet even in advancing this argument he maintains that the correct range is 8–14 months.

despite the district court's "multitude of reasons" for its choice of sentence, a review of the record disclosed "no indication that the court's decision to select the exact low and high ends of the improper range was independent of the erroneous calculation that called the court's attention to that range in the first instance." *Id.* Accordingly, the court's choice to impose a guidelines sentence at precisely the bottom of the range was found to be influenced by the erroneous Guidelines calculation, even though the district court stated several times that it would have imposed the same sentence regardless of error. *Id.* at 925.

The facts of this case are similar to those of *Martinez-Romero* in two key ways. Both cases involve: (1) sentences that correspond precisely to the bottom of an erroneous guidelines calculation; (2) statements by the district court regarding criminal history and willingness to impose sentences regardless of error in guideline calculation.[3] The key potential difference between them relates to the presence of evidence to indicate that the court's decision to select precisely the bottom of the recommended Guidelines range was independent of the erroneous calculation. In *Martinez-Romero* there was no such evidence at all. *Id.* at 926. Here, there is some inferential evidence to be accounted for—although the district court never explicitly stated that it had calculated the Guidelines range that would have applied absent the sixteen-level upward adjustment, it did say that it had considered "everything else about this case," and Rico-Mejia's preferred calculation was included with his objection to the PSR. The combination of these facts could support the inference that the district court was not influenced by the incorrect calculation, but rather chose its sentence from among alternatives solely for the reasons it stated.

---

[3] Indeed, the court in *Martinez-Romero* stated no less than three times "that even if the 16-level enhancement for the attempted kidnapping was incorrect, it would nonetheless impose the same 46-month sentence." *Martinez-Romero*, 817 F.3d at 925.

10

This potential distinction notwithstanding, we hold that the Government's reference to the district court's vague and unparticularized statement as the basis for a speculative inference that the district court considered alternative ranges that it did not calculate is insufficient to carry its heavy burden under *Richardson*. 676 F.3d at 511. This is especially true in light of the district court's choice to impose a sentence that corresponded precisely to the bottom of the erroneous guidelines range, which constitutes evidence that the range impacted the district court's decision. *See Martinez-Romero*, F.3d 917 at 925–26. Moreover, the district court's other statements at the sentencing hearing do nothing to prove that the erroneous Guidelines calculation did not impact the sentence ultimately imposed. Accordingly, and akin to the situation in *Martinez-Romero*, we find that the Government is unable to convincingly show that the sentence imposed on Rico-Mejia was uninfluenced by the erroneous Guidelines calculation, such that we are "convince[d] . . . that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error." 676 F.3d at 511; *see also Ibarra-Luna,* 628 F.3d at 718–19.

## IV.

On these facts, the Government has failed to meet its heavy burden to convincingly demonstrate that the district court would have imposed the same sentence regardless of its erroneous calculation. We therefore VACATE Rico-Mejia's sentence and REMAND to the district court for resentencing.